UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CLARK COLL, CHAPTER 7 TRUSTEE
(SUBSTITUTED IN PLACE OF CHAD GRISWOLD),

    Plaintiff,

vs.                                     No. 12 CV 139 JAP/WPL

BNSF RAILWAY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND SUBSTITUTING CLARK COLL, CHAPTER 7 TRUSTEE
AS PLAINTIFF IN PLACE OF CHAD GRISWOLD**

Defendant BNSF Railway Company (BNSF) asks the Court to dismiss the claim brought by original Plaintiff, Chad Griswold (Griswold), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq. for injuries Griswold sustained while employed as an engineer for BNSF. *See* DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S BANKRUPTCY FILING (Doc. No. 33) (Motion).[1]  BNSF contends that since Griswold failed to list the claim as an asset in a previous Chapter 7 bankruptcy case, Griswold should be barred, under the doctrine of judicial estoppel, from bringing the claim. However, after the Motion was filed, Griswold filed a motion to reopen his bankruptcy case, and a new Chapter 7 Trustee was appointed. The Trustee then sent a notice to all of Griswold's bankruptcy

---

[1] In ruling on the Motion, the Court has also considered PLAINTIFF CHAD GRISWOLD'S RESPONSE TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED UPON BANKRUPTCY FILING (Doc. No. 41) (Response); and DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S BANKRUPTCY FILING (Doc. No. 42) (Reply).

creditors of the previously unlisted asset.  In this case, Griswold has attached an affidavit to his Response stating that he will not pursue the claim for his own financial benefit. (Resp. Ex. A.) Because the doctrine of judicial estoppel should not be enforced against the Trustee in Griswold's bankruptcy and because Griswold's bankruptcy creditors should be given the chance to recover any financial proceeds from the claim, the Court will deny the Motion and will substitute the Trustee, Clark Coll, as the Plaintiff.

     I.  Background

     On February 13, 2012, Griswold, a BNSF engineer, filed his COMPLAINT AND JURY DEMAND (Complaint) alleging violations of the FELA as well as the Locomotive Boiler Inspection Act, 49 U.S.C. §§ 20701 et seq. (Compl. ¶ 4.)  Griswold alleges that on March 18, 2009, near Clarendon, Texas, Griswold severely injured his right elbow and shoulder when he slipped down the steps inside of a BNSF locomotive. (*Id.* at ¶ 5.)  On his physician's recommendation, Griswold stopped working after the injury. (Mot. State. Mat. Facts ¶ 4.)  In April 2009, Griswold applied for disability benefits from the Railroad Retirement Board, and the benefits were approved. (*Id.* at ¶5.)  In May 2009, Griswold had surgery on his injured elbow and shoulder. (*Id.* ¶ 8.)  In August 2009, Griswold's physician authorized Griswold's return to work without restrictions. (*Id.* ¶ 9.)  In September 2009, Griswold met with BNSF claims representatives, who offered Griswold $800 to settle the claim. (*Id.* ¶ 10, Resp. Ex A ¶ 2.) Griswold refused the offer. (Mot. State. Mat. Facts ¶ 12.)

     On January 11, 2011, almost two years after Griswold's injury, Griswold filed a voluntary Chapter 7 bankruptcy petition. (Case No. 11-10073j7 Jacobvitz, B.J.)  In Griswold's bankruptcy Schedule B, signed under penalty of perjury, Griswold marked "none" in box 21, which asked Griswold to list as assets all "[o]ther contingent and unliquidated claims of every

nature, including tax refunds, counterclaims of the debtor and rights to setoff claims." (Case No. 11-10073j7, Voluntary Petition, Doc. No. 1 at 10.)  Griswold also marked "none" in box 35 of Schedule B, which asked Griswold to list , "[o]ther personal property of any kind not already listed. . . ." (*Id.* at 11.)  Griswold scheduled a total of $57,225.00 in other assets and a total of $258,073.07 in secured and unsecured debt. (*Id.* at 1.)  Griswold failed to list this personal injury claim as an asset even though the claim would be considered a "contingent or unliquidated claim" or "personal property" that Griswold was required to schedule.  (*Id.*) *See Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996) (stating that under the Bankruptcy Code "property of the bankruptcy estate" includes causes of action belonging to the debtor at the commencement of the bankruptcy case).

During the meeting of creditors on February 16, 2011, Kieran Ryan, the Chapter 7 Trustee, questioned Griswold under oath about the statements in Griswold's schedules:

> Q: Have you had the opportunity to review your petition and schedule. . .?
> A: Yes, sir.
> Q: After reviewing those documents, they're all true and correct?
> A: Yes, sir.
> Q: Did you make any changes or additions to those documents today?
> A: No, sir. Other than the address, if that's–
> Q: Right, other than that.  When you filed your petition, did you list all the property and personal property that you owned?
> A: Yes, sir.
> Q: Did you also list all your debts?
> A: Yes, sir.
> Q: Anybody owe you money?
> A: No, sir.

(Mot. Ex. D at 3:4-22.)  Other than Griswold's bankruptcy petition, schedules, and testimony at the creditors' meeting, Griswold made no other representations about personal property, and Griswold did not otherwise discuss or reveal the existence of his personal injury claim.  On February 17, 2011, the Trustee filed a Report of No Distribution stating, "there is no property

available for distribution from the estate over and above that exempted by law." (Bankr. No. 11-10073j7 Doc. No.11.)  On April 25, 2011, Griswold received a discharge of debts, a final decree was entered by Bankruptcy Judge Jacobvitz, and Griswold's bankruptcy case was closed. (*Id.* Doc. Nos. 13, 14.)

In the Motion, BNSF argues that judicial estoppel should bar Griswold from bringing this claim.  BNSF contends that by failing to list the claim in his original bankruptcy schedules, Griswold took an inconsistent position as to the existence of the claim, and Griswold should not be able to benefit from that inconsistent position.  As Exhibit A to his Response to the Motion, Griswold submitted his own affidavit dated January 15, 2013 in which he testified that "[u]ntil I became aware of the BNSF's motion of summary judgment, I had no idea that the potential claim against BNSF could be considered an 'asset.'" (Resp. Ex. A ¶ 8.)  However, at his deposition taken on October 18, 2012, Griswold admitted that in September 2009, he met with two BNSF claims representatives to settle his personal injury claim, that the representatives offered too little to settle the claim, and that he sought about $50,000 in lost wages, benefits, and expenses from BNSF.  Griswold testified at his deposition that in December 2011 he hired attorney Samuel Rosenthal to represent Griswold in pursuing the personal injury claim. (*See* Mot. Ex. A 90:4–91:12; 97:17-20.)  Griswold testified,

> Q. All right. So you had that meeting with the claims people in September 2009 where you told them, "You owe me money," and they didn't offer you enough, right?
> A. Yes, sir.
> Q. So you continued to believe that you were owed money by the railroad from that time until you talked to Mr. Rosenthal to file a lawsuit; is that right?
> A. Yes, sir, because -- can I say why I thought that?
> Q. Yeah.
> A. In that, whatever it was, that meeting with those two, they said, "You can" -- they said, "You don't have to make a decision right now. Think on it." And I thought on it this whole time, and it was getting up to the statute of limitations. I thought it would be taken care of.
> Q. From that meeting until the time that you spoke with Mr. Rosenthal, you thought the railroad owed you money, and they hadn't given it to you; is that right?
> A. Yes, sir.

(Mot. Ex. A 121:11-122:6.)

In the initial Rule 26 disclosures filed in this case on November 6, 2012, Griswold indicated that he now seeks damages against BNSF in excess of $250,000. (Mot. Ex. E Plaintiff's Initial Disclosures Pursuant to Rule 26(a)(2)). In his Response affidavit, Griswold testified that after learning he should have listed the claim as an asset in his bankruptcy, Griswold instructed his bankruptcy attorney, Wesley Pool, to contact the previous Chapter 7 trustee, Kieran Ryan, and inform Mr. Ryan of the claim. (Resp. Ex. A ¶ 9.)  Griswold also testified, "[i]n the event there is any future recovery in this case, I am agreeing to waive any right to future set off I may personally be entitled to in that action.  In addition, even assuming my former creditors are, indeed, paid off in full, I am agreeing to personally forfeit any and all monetary gain in the above referenced action." (Resp. Ex. A ¶ 10.)  Griswold further averred, "[i]n the event that the Trustee chooses not to pursue this lawsuit, I have chosen to voluntarily withdrawal [sic] this lawsuit." (*Id.* ¶ 11.)

On February 1, 2013, Griswold filed a Motion to Reopen Bankruptcy Case. (Bankr. No. 11-10073j7 Doc. No. 16.)  On February 6, 2013, the Bankruptcy Court granted Griswold's

5

Motion to Reopen (*Id.* Doc. No. 18), and on February 12, 2013, Clark Coll was appointed Chapter 7 Trustee (Trustee) in the reopened bankruptcy case. (*Id.*)  On February 26, 2013, Griswold filed an Amended Schedule B in which he listed the personal injury claim as an asset. (*Id.* Doc. No. 22 at 1.)  On April 10, 2013, the Trustee sent a Notice of Possible Dividend to all creditors instructing them to file proofs of claim in the bankruptcy case within 90 days. (*Id.* Doc. No. 24.)  On April 17, 2013, the Trustee filed an application to retain Samuel Rosenthal to represent Griswold's bankruptcy estate in the case against BNSF, and on the same date, the Trustee sent out a required notice to all creditors stating that objections to the application must be filed within 21 days of the notice. (*Id.* Doc. Nos. 29, 30.)  No objections were filed within the 21-day notice period. (*Id.*)

    II.  Standard of Review

        A.  Summary Judgment Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

B.  Judicial Estoppel Standard

Because Griswold's bankruptcy and personal injury claim involve federal law, the Court must apply federal judicial estoppel principles. *Eastman v. Union Pacific Railroad Company*, 493 F.3d 1151, 1156 (10th Cir. 2007). Under federal law, the doctrine of judicial estoppel is designed to protect the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). In *New Hampshire v. Maine*, the Supreme Court set forth three factors to consider when applying the doctrine in a particular case. 532 U.S. at 750. First, a party's subsequent position must be "clearly inconsistent" with the party's former position. *Id.* Second, a party must have succeeded in persuading the court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" *Id.* Third, the party seeking to assert an inconsistent position would gain an unfair advantage in the latter case if not estopped. *Id.* at 751. *See Eastman*, 493 F.3d at 1156 (applying the three factors).

C.  Relevant Bankruptcy Law

Under the Bankruptcy Code, "[a] voluntary case under [Chapter 7] . . . is commenced by the filing with the bankruptcy court of a petition. . . ." 11 U.S.C. § 301(a). "The commencement of a case under section 301, . . . creates an estate. . . . comprised of all . . . legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). After a Chapter 7 case is filed, a Chapter 7 trustee is appointed. 11 U.S.C. §§ 701, 702(d). A Chapter 7 trustee must "collect and reduce to money the property of the estate . . ." and must distribute the proceeds of the debtor's property to creditors under the priority scheme in the Bankruptcy Code. 11 U.S.C. § 726. The bankruptcy trustee is the representative of the

bankruptcy estate and has the "capacity to sue and be sued." 11 U.S.C. § 323(a) and (b). Each debtor who files a bankruptcy case must *inter alia* file a list of creditors, a schedule of assets and liabilities, a schedule of income and expenses, and a statement of financial affairs. 11 U.S.C. § 521(a)(1). Unless the bankruptcy court orders otherwise, "any property scheduled under section 521(a)(1) . . . not otherwise administered at the time of the closing of a case is abandoned to the debtor. . . ." 11 U.S.C. § 554(c). However, "property of the estate that is not abandoned under [§ 554], . . . and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). Under these provisions, a cause of action not scheduled as an asset in bankruptcy cannot be deemed abandoned under § 554(c), and the unscheduled property technically remains property of the bankruptcy estate. *See Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 629 (E.D. Pa. 2002) (stating that an unscheduled cause of action remains property of the bankruptcy estate) and *Calabrese v. McHugh*, 170 F. Supp. 2d 243, 256 (D. Conn. 2001) (stating that "[a] cause of action is part of the estate even if the debtor failed to schedule the claim in his petition" and concluding that "claims not abandoned by the trustee under [sections 554(a) and 554(b)] remain part of the estate even after closure of the bankruptcy case[] . . . .").

    III.  Discussion

BNSF argues that the three judicial estoppel factors outlined in *New Hampshire*, are met, and this case is essentially identical to *Eastman*. The Court agrees as to the first and second judicial estoppel factors, but not as to the third factor. First, Griswold's failure to list his personal injury claim on Schedule B as an asset constitutes a representation that no contingent or unliquidated asset existed at the time Griswold filed his bankruptcy petition. Griswold's denial that his personal injury claim existed at the time he filed his bankruptcy is a position that is "clearly inconsistent" with Griswold's current assertion of the claim in this lawsuit. *Eastman*,

493 F.3d at 1153-54 (noting that the plaintiff had taken an inconsistent position by failing to list a pre-existing personal injury claim on his bankruptcy schedule of assets). Second, since Griswold received a discharge of debts in his Chapter 7 bankruptcy, Griswold was successful in asserting his position thereby leaving the impression that the bankruptcy court was misled. *Id.* However, under the circumstances presented here, the third factor is not met because Griswold himself will not "gain an unfair advantage" in this case. Griswold correctly argues that this case is significantly different from *Eastman* because Griswold has reopened his bankruptcy case and has disclaimed any interest in the proceeds of the claim. According to Griswold, his bankruptcy creditors, and only his bankruptcy creditors, will be paid from any proceeds recovered on the claim. (Resp. Ex. A.)

In *Eastman*, the district court applied judicial estoppel to bar the plaintiff, Wayne Gardner (Gardner), from asserting a personal injury claim that Gardner had failed to list as an asset on his bankruptcy schedules. At the time Gardner filed for Chapter 7 bankruptcy relief, however, Gardner had already filed a personal injury lawsuit in federal district court. *Id.* at 1153. Gardner's personal injury claim arose from an automobile accident and was filed against his employer, Union Pacific Railroad Company (UPRC), and eight other defendants, six of whom were not related to UPRC. *Id.* At his creditor's meeting, Gardner partially disclosed his preexisting lawsuit in response to a direct question asking whether he had been in an accident. *Id.* However, Gardner and his bankruptcy attorney described Gardner's injury as a workplace injury and the claim as a worker's compensation-type claim. *Id.* Based on the schedules and the answers at the creditor's meeting that the claim was essentially an exempt worker's compensation claim, the trustee in Gardner's bankruptcy case filed a "no asset" notice, Gardner was discharged from his debts, and the bankruptcy case was closed. *Id.* at 1154. Gardner's

9

personal injury attorney apparently discovered Gardner's bankruptcy a year later and moved to reopen the bankruptcy case to list the claim as an asset. *Id.* In the personal injury case, the district court allowed the Chapter 7 trustee of the reopened bankruptcy case to intervene on behalf of Gardner's creditors. *Id.*

Despite the Chapter 7 trustee's joinder in *Eastman*, the district court dismissed the personal injury claim under the doctrine of judicial estoppel because at the time of its decision, Gardner was still asserting his right to some of the proceeds of the claim. *Id.* Just prior to the district court's decision, the Chapter 7 trustee settled with two of the defendants and paid Gardner's bankruptcy creditors in full. *Id.* at 1155. Thereafter, the bankruptcy court ordered the trustee to abandon the estate's interest in the personal injury suit. *Id.* At some point after the district court's decision, the trustee abandoned the claim, Gardner became the sole owner of the abandoned claim, and only Gardner would have benefitted from any recovery against the remaining defendants. *Id.* In a comment instructive to the Court's analysis here, the Tenth Circuit noted that at the time the district court dismissed Gardner's claim, the trustee had not yet abandoned Gardner's claim, and in that instance, the district court should not have applied judicial estoppel against the trustee:

> Quite likely the district court's application of judicial estoppel against the trustee was inappropriate, at least to the extent Gardner's personal injury claims were necessary to satisfy his debts. This is because at the time of the court's decision, the trustee as the real-party-in-interest had not engaged in contradictory litigation tactics. But because Gardner's creditors have been paid and the trustee, on behalf of the estate, has abandoned Gardner's personal injury claims, Gardner's creditors no longer have an interest in such claims. With those claims once again in Gardner's hands, judicial estoppel becomes an appropriate subject for our consideration.

*Id.* at 1155 n.3 (internal citations omitted). Here, although the Court is asked to apply the doctrine of judicial estoppel against Griswold only, dismissing Griswold's claim would work

against the true party in interest with ownership of the claim, the Chapter 7 Trustee.  Under the ruling in *Eastman*, the application of judicial estoppel against the Trustee in Griswold's reopened bankruptcy is likewise inappropriate. *Id.*

*Ardese v. DCT, Inc.*, No. 07-7069, 2008 WL 2216965 (10th Cir. May 29, 2008) (unpublished opinion) is another example of the Tenth Circuit's application of judicial estoppel to a plaintiff who failed to disclose a claim in bankruptcy.  In *Ardese*, the plaintiff had filed a charge with the National Labor Relations Board (NLRB) against her employer, DCT, Inc., claiming that the termination of her employment violated the Collective Bargaining Agreement (CBA). *Id.* at **1.  The plaintiff also filed a charge against DCT with the EEOC alleging disability, racial, and gender discrimination and retaliation. *Id.*  While her charge was pending before the EEOC, the plaintiff filed a Chapter 7 bankruptcy petition.  However, the plaintiff did not disclose her EEOC charge or potential claims against DCT as assets on her bankruptcy schedules. *Id.*  On the day that the plaintiff received a discharge of debts, the plaintiff filed a lawsuit in federal district court against DCT, the Union, and several individuals for sexual harassment, gender and race discrimination, retaliation, and violations of the ADA. *Id.*  Two weeks later, the plaintiff 's bankruptcy case was closed. *Id.*  During the period between the plaintiff's bankruptcy discharge and the closing of plaintiff's bankruptcy case, DCT moved to dismiss the federal district court case arguing that the plaintiff lacked standing to assert the discrimination claims, that the Chapter 7 Trustee was the real party in interest, but in the alternative, if the plaintiff was the proper party, the plaintiff was judicially estopped from suing DCT. *Id.* at **2.

After receiving DCT's motion, the plaintiff reopened her just-closed bankruptcy case and disclosed her claims against DCT. *Id.*  The plaintiff then moved to join the bankruptcy trustee as

a plaintiff in the federal district court discrimination lawsuit. *Id.* In the plaintiff's response to DCT's motion, the plaintiff argued that the Chapter 7 trustee had standing to recover proceeds from the lawsuit on behalf of her bankruptcy creditors and that the plaintiff had standing to recover any excess proceeds after her creditors were paid in full. *Id.* The district court granted the motion in part and dismissed the plaintiff's claim. However, the court denied the motion in part finding that the trustee had standing to assert the claims for the benefit of plaintiff's bankruptcy creditors. *Id.* DCT then filed a motion for summary judgment asking the district court to dismiss the trustee's claim under the doctrine of judicial estoppel. *Id.* At the same time, the plaintiff and the trustee jointly filed a motion asking the court to replace the trustee, who had abandoned the estate's interest in the lawsuit under a settlement, and to allow the plaintiff to step back in as sole plaintiff in the lawsuit. *Id.* The trustee informed the court that the trustee, the plaintiff, and two defendants in the lawsuit had settled, the trustee had used the settlement proceeds to pay plaintiff's bankruptcy creditors in full, and thereafter, the plaintiff purchased the claim from the bankruptcy estate. *Id.* The court denied the joint motion to substitute the plaintiff as a party in the lawsuit. The court also granted summary judgment in favor of DCT concluding that the plaintiff was judicially estopped from pursuing the claims, "despite her later attempt to cure the omission[]" in her bankruptcy schedules. *Id.* The plaintiff appealed, and the Tenth Circuit affirmed and noted that "courts will generally not allow a plaintiff to" avoid judicial estoppel by "amend[ing] her bankruptcy filings in response to a motion for summary judgment-based on judicial estoppel-in an ongoing civil case." *Id.* at \*\*5 (citing *Eastman*).

As *Eastman* and *Ardese* demonstrate, under most circumstances judicial estoppel would prohibit a plaintiff, who has successfully discharged debts in bankruptcy without listing a claim as an asset, from later asserting that same claim even if the plaintiff reopens his or her

12

bankruptcy case, amends schedules, and joins the bankruptcy trustee as a plaintiff. *Eastman*, 493 F.3d at 1156; *Ardese*, 2008 WL 2216965, at * 3-*4.  In these and other cases, courts properly applied judicial estoppel to prevent a party from "playing fast and loose with the courts, from blowing hot and cold as the occasion demands, or from attempting to mislead the [courts] to gain an unfair advantage." *Eastman*, 493 F.3d at 1156 (quoting, *King v. Herbert J. Thomas Mem. Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998)).

BNSF asserts that this case differs little from *Eastman* and that the three judicial estoppel criteria are met: (1) Griswold failed to disclose a potential claim as an asset of his bankruptcy estate; (2) Griswold received a discharge of his debts in bankruptcy; and (3) Griswold now seeks to benefit from the inconsistent position by recovering damages in this case. *Id.*; *Ardese*, 2008 WL 2216965, at * 3-*4.  However, since Griswold has disclaimed an interest in the proceeds of this lawsuit, the important third element is not met.  Unlike the plaintiff in *Ardese*, who purchased her claim against two remaining defendants after her creditors were paid in full, Griswold, through his affidavit, has disclaimed any interest in the proceeds of this lawsuit even if the award is more than the amount owed to his creditors.  (*See* Resp. Ex. A ¶¶ 10-11.)  With his affidavit testimony, Griswold has indicated his intent to withdraw the claim if the Trustee chooses not to pursue this lawsuit.  Therefore, Griswold has positioned himself so as not to benefit from his previous inconsistent position.

BNSF counters that, as an equitable matter, Griswold has already gained an unfair advantage by receiving a discharge in bankruptcy without having disclosed this claim as a potential asset; therefore, Griswold has already benefitted from his inconsistent position.  While BNSF is correct that the Griswold received the benefit of a bankruptcy discharge, conversely, Griswold's bankruptcy creditors were disadvantaged by Griswold's failure to disclose this

potential asset. Equitably speaking, the Court would agree that Griswold should not be rewarded for the omission of an asset. However, a dismissal here would cause an inequitable harm to Griswold's bankruptcy creditors, and Griswold has enabled his Trustee to remedy that harm. Since Griswold has waived any right to the proceeds of this lawsuit, and since the Trustee in Griswold's reopened bankruptcy is advancing the creditor's interests in the claim, the imposition of judicial estoppel would be inappropriate. The equitable concerns underlying judicial estoppel will not be satisfied if the Court mechanically applies the doctrine and dismisses this case. As the Seventh Circuit has stated,

> Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit. Moreover, as a technical matter the estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims, and unless the estate itself engages in contradictory litigation tactics the elements of judicial estoppel are not satisfied.

*Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (noting that the trustee had abandoned any interest in the litigation, so the creditors were "out of the picture" and upholding dismissal of case brought by plaintiff who concealed claim in bankruptcy and sought to personally benefit from the claim). *See also Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, 363 B.R. 177, 187-88 (10th Cir. BAP 2007) (noting that the plaintiff's failure to disclose a personal injury claim in his bankruptcy harmed his creditors by hiding assets from them, but "using this same nondisclosure to wipe out the plaintiff's injury claim would complete the job by denying creditors even the right to seek some share of the recovery."). Under different circumstances, judicial estoppel would prevent Griswold's recovery of damages in this case. But, applying the doctrine here would be essentially the same as applying the doctrine against the Trustee of Griswold's bankruptcy estate, who has standing to pursue the claim for the benefit of bankruptcy creditors.

More importantly, however, it is the Trustee who must prosecute Griswold's claim because the claim is still property of Griswold's bankruptcy estate. *See Barger v. City of Cartersville*, 348 F.3d 1289,1291(11th Cir. 2003) (stating, "property of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy."); and *First Sec. Bank of Utah, N.A. v. Gillman,* 158 B.R. 498, (D. Utah 1993) (stating that the definition of property of the bankruptcy estate is intended to be broad and includes causes of action). Under 11 U.S.C. § 521(a)(1), all property of the debtor must be listed in a debtor's bankruptcy schedules. Unless the bankruptcy court orders otherwise, "any property scheduled under section 521(a)(1) . . . not otherwise administered at the time of the closing of a case is abandoned to the debtor. . . ." 11 U.S.C. § 554(c). Since Griswold did not list this claim in his bankruptcy schedules, Griswold's claim was not abandoned under § 554(c). And under § 554(d), the claim remains property of Griswold's bankruptcy estate: "Unless the court orders otherwise, property of the estate that is not abandoned under [§ 554], . . . and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). The Bankruptcy Code provides that the bankruptcy trustee is the representative of the bankruptcy estate who may "sue and be sued." 11 U.S.C. § 323(a) and (b). "Taken together, these provisions strongly imply that the bankruptcy trustee, as the bankruptcy estate's representative, has the exclusive right to assert causes of action belonging to the bankruptcy estate." *Ardese v. DCT, Inc*., No. 06-CV-012, 2006 WL 3757916, *4 (E.D. Okla. 2006) (unpublished decision) *aff'd*, No. 07-7069, 2008 WL 2216965 (10th Cir. May 29, 2008) (unpublished opinion) (citing cases).

In sum, bankruptcy law grants the Trustee ownership of Griswold's personal injury claim. If the Trustee settles or obtains a verdict for damages, Griswold's bankruptcy creditors may obtain payment of their claims. If, however, the proceeds of Griswold's claim are greater

than the amount required to pay Griswold's bankruptcy debts, administrative expenses, and costs, Griswold will not benefit because he has disclaimed any monetary interest in the excess proceeds.  Thus, the Court will not apply judicial estoppel under the circumstances presented here.  However, to ensure that only Griswold's bankruptcy creditors benefit from any proceeds of the claim, the Court will dismiss Chad Griswold as the Plaintiff and will substitute the Chapter 7 Trustee as the Plaintiff.  *See Lemaster v. Collins Bus Corp.*, No. 11–2128, 2012 WL 5397996, * 6 (D. Kan. Nov. 2, 2012) (unpublished decision) (granting summary judgment dismissing individual plaintiff from suit on basis of judicial estoppel but allowing bankruptcy trustee to intervene on behalf of plaintiff's creditors).

    IT IS ORDERED that

    1.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S BANKRUPTCY FILING (Doc. No. 33) is denied; and

    2.  The Chapter 7 Trustee Clark Coll is substituted as the Plaintiff.

*[signature: James A. Parker]*
SENIOR UNITED STATES DISTRICT JUDGE