IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CLARK COLL, CHAPTER 7 TRUSTEE,**
    Plaintiff,

vs.

                                                                                 No. 12 CV 139 JAP/WPL

**BNSF RAILWAY COMPANY,**
    Defendant.

**MEMORANDUM OPINION AND ORDER**

On January 16, 2014, Defendant BNSF Railway Company (BNSF) moved for summary judgment. *See* BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 58) (Motion). BNSF argues that (1) federal law precludes Plaintiff's claims and (2) Plaintiff has not produced sufficient evidence that BNSF acted negligently or that BNSF's negligence caused Plaintiff's injuries.[1] Plaintiff opposes the Motion. *See* PLAINTIFF'S RESPONSE TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT [SIC] (Doc. No. 64) (Response). As described below, the Court will grant in part and deny in part BNSF's Motion.

**BACKGROUND**

**I.     The March 18, 2009 Accident**

On March 18, 2009, Mr. Chad Griswold, a BNSF employee, injured his right elbow and shoulder when he slipped down the steps inside a BNSF locomotive, Locomotive 5371. Employee Personal Injury/Occupational Illness Report, Exhibit B to Response (Doc. No. 64-2). After the accident, Mr. Griswold filled out a BNSF Employee Personal Injury Form reporting the accident and explaining that he "slipped on worn smooth second step." *Id.* According to Mr. Griswold, his right foot slipped because the step was "worn off there" and was "pretty slick."

---

[1] Plaintiff Clark Coll seeks damages based on an injury the original plaintiff Chad Griswold suffered while employed by BNSF. Mr. Coll is Mr. Griswold's Chapter 7 bankruptcy trustee.

1

Deposition of Chad Griswold, Exhibit A to Response (Doc. No. 64-1) (Griswold Deposition) 53:6-11. At the time of the fall, the steps were dry and clear of debris. *Id.* at 55:2-9.

## II.     Mr. Russell Kendzior's Expert Report

On October 12, 2013, Plaintiff's slip-and-fall expert, Mr. Russell Kendzior inspected the stairway in Locomotive 5371. Traction Experts, Inc. Summary Report, Exhibit D to Response (Doc. No. 64-4). In his October 19, 2013 report, Mr. Kendzior opines that "the stairway in question was improperly designed, maintained, and constructed" in violation of various safety codes and industry standards including Occupational Health and Safety Administration (OSHA) regulations, American Society of Testing and Materials (ASTM) standards, and American National Standards Institute (ANSI) standards. *Id.* at 3. Mr. Kendzior identifies five defects: (1) the lack of slip resistant tread or nosing, (2) inappropriately marked nosing, (3) the absence of a "gripable handrail," (4) insufficient warnings, and (5) unsafe "step geometry" – the step on which Mr. Griswold fell is 10 inches tall and 10 inches deep. *Id.* at 4-5. In addition, Mr. Kendzior states that BNSF failed to "properly inspect, test or audit the slip resistance of [the] stairway in question." *Id.* at 4. According to Mr. Kendzior, the improper design, maintenance, and inspection contributed to Mr. Griswold's fall. *Id.*

## III.    Plaintiff's Complaint

In the complaint, Plaintiff asserts claims under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60; the Federal Safety Appliance Act (FSAA), 49 U.S.C. § 20301, et seq.; and the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701-20703. Because Plaintiff now withdraws his FSAA claim, Response at 19, the Court will dismiss this claim with prejudice.

Given the general nature of the allegations in Plaintiff's complaint, it is not entirely clear

what theories of liability Plaintiff intends to present to the jury. Based on its reading of Mr. Kendzior's report, the Court assumes Plaintiff will make claims based on BNSF's failure to 1) maintain the steps, 2) treat the steps with slip resistant tread, 3) mark the step nosing, 4) install a handrail, 5) post warning signs, 6) modify the "step geometry," and 7) inspect the slip resistance of the steps. The Court construes the complaint as asserting all of these claims under both the LIA and the FELA.

## DISCUSSION

I.     **Standard of Review**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted).  Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

**II.     The Locomotive Inspection Act**

Plaintiff claims that BNSF improperly designed, maintained, and inspected the stairway on Locomotive 5371 in violation of the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701-20703 (formerly known as the Boiler Inspection Act, 45 U.S.C. §§ 22-34). The LIA "imposes an absolute duty on railroad carriers to ensure that their locomotives are properly maintained and safe to operate." *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001) (internal citation omitted). Under the LIA:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances --
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury; (2) have been inspected as required . . .; and (3) can withstand every test prescribed by the Secretary [of Transportation]. . .

49 U.S.C. § 20701. Because the LIA does not create an independent cause of action, an LIA claim must be brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60. A railroad carrier who violates the LIA is strictly liable for any resulting harm under the FELA. *McGinn v. Burlington N. R.R.*, 102 F.3d 295, 299 (7th Cir. 1996). Here, Plaintiff contends that BNSF violated the LIA by (1) operating a locomotive whose parts and appurtenances were in an unsafe condition, (2) failing to comply with Federal Railroad Administration (FRA) regulations, and (3) failing to properly inspect the stairway. The Court will address each contention in turn.

    **A. Operating a Locomotive in an Unsafe Condition**

The general provision of the LIA prohibits railroad carriers from operating a locomotive whose parts and appurtenances pose an "unnecessary danger of personal injury." 49 U.S.C. § 20701. The validity of a claim brought under this provision depends in large part on whether the court categorizes the claim as a "failure to maintain" claim or a "failure to install" claim. *King v. Southern Pacific Transp. Co.*, 855 F.2d 1485, 1489 (10th Cir. 1988) (failure to maintain claims

are "entirely different from claims that a railroad is liable for failing to install additional safety devices . . . [s]uch 'failure to install' claims have been rejected"); *Giebel v. Union Pac. R.R. Co.*, No. 08-cv-6294, 2010 U.S. Dist. LEXIS 46233, at *8 (D. Minn. May 11, 2010) ("Federal courts have strictly limited failure-to-install claims."). As the name would suggest, a failure to maintain claim arises when a plaintiff alleges that a railroad carrier failed to repair or refurbish locomotive parts thereby creating an unsafe condition. Compliance with the regulations promulgated by the FRA is not a defense to such a claim. *King*, 855 F.2d at 1489.

Courts treat failure to install claims differently. A railroad carrier will only incur liability under the general provision of the LIA for failing to install equipment if the missing equipment constitutes "an integral or essential part of a completed locomotive." *King*, 855 F.2d at 1488-89. Optional safety features are not "integral or essential." *See*, *e.g.*, *McGinn*, 102 F.3d at 299 ("A luggage rack is not a mechanical component essential to the operation of a locomotive."); *King*, 855 F.2d at 1490 (the uniform installation of armrests does not transform armrests into an integral appliance under the LIA); *Mosco v. Baltimore & O. Railroad*, 817 F.2d 1088, 1091 (4th Cir. 1987) (the LIA does not mandate the installation of protective window devices, such as bars and screens); *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1154 (9th Cir. 1983) (strobe and oscillating lights are not integral or essential warning devices).

Here, Plaintiff asserts both a "failure to maintain" claim and a "failure to install" claim. First, Plaintiff professes that BNSF permitted the step on which Mr. Griswold fell to deteriorate, through regular use, until it was worn, smooth, and unsafe. Mr. Griswold testified that his foot slipped because the step was "worn" and "pretty slick" from traffic. Griswold Deposition at 53:10-14. Mr. Griswold's testimony raises a genuine issue of material fact about the condition of the step and about whether the condition of the step caused Mr. Griswold to suffer injury. *See*

5

*Whelan v. Penn Cent. Co.*, 503 F.2d 886, 889 (2d Cir. 1974) (finding that a jury could reasonably conclude a brakeman's fall was caused by an icy, bent rear step, which had a small metal strip coming loose); *Bolan v. Lehigh Valley R. Co.*, 167 F.2d 934, 937 (2d Cir. 1948) (holding that there was sufficient evidence for the jury to conclude the condition of a pilot step caused the plaintiff's fall where the plaintiff testified that he fell because of the location of the bolt heads on the step); *Davis v. Reynolds*, 280 F. 363, 365 (4th Cir. 1922) (denying the defendant's request for a directed verdict on plaintiff's claim that a slick sill step caused him to fall where the plaintiff testified that he would not have fallen if the step had been maintained in a rough condition).

BNSF repeatedly contends that Mr. Griswold's uncorroborated "self-serving testimony" is insufficient to support Plaintiff's failure to maintain claim. S*ee* DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 69) 2, 7; Motion at 3, 10-11. But, BNSF does not cite any case law supporting this position. In general, expert testimony is not necessary if the normal experience and qualifications of the jurors would permit them to draw proper conclusions from the evidence. *See*, *e.g.*, *Wheeler Peak, LLC v. L.C.I.2, Inc.*, No. 07-1117, 2010 U.S. Dist. LEXIS 13369, at *13 (D.N.M. Jan. 31, 2010) (in New Mexico, expert testimony is not required to establish breach of a professional duty if the duty is "within the common experience or knowledge of a layman"); *Keller v. Albright*, 1 F. Supp. 2d 1279, 1281 (D. Utah 1997) (under Utah law, a plaintiff is not required to produce an expert opinion "where the propriety of the defendant's conduct is within the common knowledge and experience of the layman."); *Anderson v. Siemen's Westinghouse Power Corp.*, No. 01-4121, 2002 U.S. Dist. LEXIS 25113, at *11 (D. Kan. Dec. 30, 2002) (in Kansas, expert testimony is not required unless the case presents a question "an ordinary person is not equipped by common knowledge and skill to judge"). The risk associated with failing to refurbish a slippery staircase is a matter within the

normal life experience of jurors. Plaintiff's failure to maintain claim is not completely lacking in evidentiary support as BNSF claims. *See* Motion at 7.

Neither is Plaintiff's failure to maintain claim merely a hidden failure to design claim. In *King*, the Tenth Circuit recognized that a failure to maintain claim exists if "a railroad has allowed a locomotive, or its parts and appurtenances to deteriorate so that the locomotive cannot be operated safely . . ." *King*, 855 F.2d at 1489 n.3. The Tenth Circuit provided several examples of failure to maintain claims, including claims involving "worn and bent" steps. *Id.* The Court will permit Plaintiff's LIA failure to maintain claim to proceed to the jury.

Second, Plaintiff claims that the steps in Locomotive 5371were improperly constructed. In particular, Plaintiff contends that the staircase created unnecessary danger of personal injury because the nosing on the steps was unmarked, there was no handrail, the tread on the steps was not deep enough, the steps were too tall, and there were no warning signs. These installation, warning, and design claims are properly categorized as "failure to install" claims. *See Monheim v. Union R.R. Co.*, 788 F. Supp. 2d 394, 400 (W.D. Pa. 2011) (explaining that failure to design claims, otherwise known as failure to install claims, are not cognizable under the LIA). Because the Court is not convinced that the additional safety features described by Plaintiff are integral or essential to a completed locomotive, the Court will grant summary judgment in favor of BNSF on Plaintiff's LIA installation, warning, and design claims.

### B. FRA Regulations

A railroad carrier who fails to comply with an FRA regulation violates the LIA and is strictly liable for harm caused by the violation. 49 U.S.C. § 20701. Plaintiff identifies two pertinent FRA regulations: (1) 49 C.F.R. § 229.119(c), which requires that "floors of cabs, passageways, and compartments" be "properly treated to provide secure footing;" and (2) 49

C.F.R. § 229.45, a catch-all provision requiring that "all systems and components on a locomotive . . . be free of conditions that endanger the safety of the crew. . ."

Because 49 C.F.R. § 229.119(c) does not explicitly define "secure footing" or otherwise detail the measures a railroad carrier must take to provide adequate flooring, the Court interprets "secure footing" broadly as safe footing. Read in its entirety, 49 C.F.R. § 229.119(c) directs railroad carriers to remedy and prevent slipping hazards.[2] Moreover, a broad reading of 49 C.F.R. § 229.119(c) accords with the willingness of federal courts to impose liability under 49 C.F.R. § 229.119(c) whenever a railroad carrier allows its locomotive flooring to remain in a condition that increases the risk of falling. *See McGinn*, 102 F.3d at 300 ("49 C.F.R. § 229.119(c) imposes liability for failure to repair objects of which the engine cab is comprised, such as protruding floor boards or bolts that may create a tripping hazard."); *Riley v. Union Pac. R.R. Co.*, No. civ-09-155, 2010 U.S. Dist. LEXIS 46510, at *1-2 (E.D. Okla. May 12, 2010) (finding that a railroad carrier violated 49 C.F.R. § 229.119(c) where the plaintiff stepped on a rusted metal plate in the floor, which gave out, caught his foot, and caused him to fall).

Despite BNSF's protestations to the contrary, there is evidence that BNSF failed to properly treat the steps in Locomotive 5371. Mr. Kendzior, Plaintiff's expert, explains that Mr. Griswold's fall could have been prevented by the use of slip resistant tread or nosing. Moreover, as previously discussed, Mr. Griswold testified that he fell because of the slippery and worn condition of the step. Plaintiff has presented sufficient evidence for a reasonable jury to conclude that BNSF failed to properly treat the steps in Locomotive 5371 so as to provide secure footing. However, to the extent Plaintiff claims BNSF violated 49 C.F.R. § 229.119(c) by failing to inspect the stairway, by failing to install a handrail, by failing to provide warning signs, or by

---

[2] 49 C.F.R. § 229.119(c) reads: "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing."

failing to utilize a different "step geometry," these claims fail. 49 C.F.R. § 229.119(c) directs railroad carriers to properly "treat" locomotive flooring; 49 C.F.R. § 229.119(c) does not mandate the installation of additional safety features, which affect walking conditions, but do not involve the treatment of the floor itself.

Next, Plaintiff contends that BNSF is liable under the LIA because the condition of the steps "endangered the safety of crewmen" in violation of 49 C.F.R. § 229.45. Response at 14. Because 49 C.F.R. § 229.45 does not provide an independent basis for liability, the Court will not permit Plaintiff to submit this theory to the jury. 49 C.F.R. § 229.45 simply restates the general requirement of the LIA: railroad carriers must maintain the locomotive in a safe condition. In addition, 49 C.F.R. § 229.45 contains examples of proscribed conditions, such as the "insecure attachment of components" and "excessive wear." These examples, which involve improper upkeep and installation, confirm that 49 C.F.R. § 229.45 does not expand LIA liability and does not permit Plaintiff to revive his unsuccessful LIA design claims. *See Danko v. Union Pac. R.R.*, No. 4:05-cv-153, 2007 U.S. Dist. LEXIS 46972, at *17 (N.D. Tex. June 28, 2007) ("[49 C.F.R. § 229.45] . . . is not applicable to [plaintiff's] contentions that the design of the locomotives he operates, even when all components are in good working order, has caused or contributed to his injuries."); *Munns v. CSX Transp., Inc.*, 579 F. Supp. 2d 924, 934 (N.D. Ohio 2008) (explaining that 49 C.F.R. § 229.45 "impose[s] upon railroads a general duty to **maintain** its parts and appurtenances") (emphasis added).

### C. Required Inspections

The LIA imposes an absolute duty on railroad carriers to inspect each locomotive "as required" prior to operation. 49 U.S.C. § 20701. Plaintiff's expert opines that BNSF should have identified or verified the "actual slip resistance of the stairway" during its inspection. However,

9

this is not mandated by 49 C.F.R. § 229.21, the regulation delineating inspection requirements. There is no evidence in the record to suggest that BNSF failed to comply with 49 C.F.R. § 229.21. For this reason, the Court will grant summary judgment in favor of BNSF on Plaintiff's LIA failure to inspect claim.

## III.  Federal Employers' Liability Act

Under the FELA, a railroad carrier is "liable in damages to any person suffering injury while he is employed by such carrier" if the injury resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

### A.  LIA Preclusion

BNSF argues that Plaintiff's FELA claims are precluded by the LIA. Motion at 4. To support its position, BNSF cites *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261 (2012). In *Kurns*, the Supreme Court held that "state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by the LIA." *Id.* at 1270. Because Plaintiff does not bring a state law claim against BNSF, *Kurns* is inapplicable. The real issue raised by BNSF is not preemption; it is the interaction between two federal statutes the LIA and the FELA. This issue has long been resolved.

The LIA does not supersede the FELA. The LIA supplements the FELA by providing additional protection to railroad employees. *See Urie v. Thompson*, 337 U.S. 163, 189 (1949) (the LIA has "the purpose and effect of facilitating employee recovery, not of restricting such recovery or making it impossible"); *King*, 855 F.2d at 1489 n.1 ("The [LIA] is to be considered together with other federal railroad safety laws, and is to be construed liberally to carry out their

remedial and humanitarian purposes."). In *Matson*, the Tenth Circuit succinctly explained the difference between the LIA and the FELA:

> FELA and LIA are remedial and humanitarian statutes that impose two separate types of liability to protect the safety of railroad employees. FELA permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees. LIA, on the other hand, imposes an absolute duty on railroad carriers to ensure that their locomotives are both properly maintained and safe to operate.

*Matson*, 240 F.3d at 1235 (internal citations omitted). "[C]laims which cannot be maintained under the [LIA] are often actionable under the FELA." *King*, 855 F.2d at 1489 n.1.

Many of the cases cited by BNSF involve the interaction of the Federal Railroad Safety Act of 1970 (FRSA), 49 U.S.C. § 20106, and the FELA, not the relation of the LIA to the FELA. FRSA preclusion is not the same as LIA preemption. As further discussed below, FRSA preclusion is limited to situations where an FRA regulation covers the defendant's allegedly negligent conduct. LIA preemption is complete. *Kurns*, 132 S. Ct.at 1266 (affirming that the LIA occupies the entire field of regulating locomotive equipment). In *King*, the Tenth Circuit clearly indicated that the LIA does not bar claims under the FELA. The cases cited by BNSF suggesting otherwise are not binding on this Court and do not affect the validity of *King*.[3] The Court will consider the merits of Plaintiff's FELA claim separately from the merits of Plaintiff's LIA claim.

## B. FRA preclusion

As part of its LIA preclusion argument, BNSF cites cases discussing the relation between the FRSA and the FELA. BNSF asserts that a "plaintiff cannot attempt to impose a different

---

[3] BNSF cites *Garza v. Norfolk Southern Ry. Co.*, No. 09-cv-2045, 2012 U.S. Dist. LEXIS 123011 (N.D. Ohio July 23, 2012); *Dickerson v. Staten Trucking, Inc.*, 428 F. Supp. 2d 909 (E.D. Ark. 2006); *Key v. Norfolk S. Ry.*, 228 Ga. App. 305 (Ga. Ct. App. 1997). Only one of these cases, *Garza*, truly involves complete LIA preemption. In both *Dickerson* and *Key*, the Court identified a pertinent FRA regulation that precluded the plaintiff's FELA claim. In *Key*, the plaintiff sued his employer after falling from a built-in switching step while descending from the train. *Key*, 228 Ga. App. At 306. As the Court explained, the plaintiff's claim was precluded because the FRA had issued a regulation, accompanied by schematic diagrams, which described in detail the construction and materials requirements for switching steps. *Id.*

standard on the railroad through private litigation" when "the FRA has issued a rule or regulation 'covering' the subject matter." Motion at 6. BNSF alludes to the preemption provision of the FRSA, which permits a State to "adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." *Id.* On its face, 49 U.S.C. § 20106 only applies to state law. However, numerous federal courts have extended the FRSA preemption provision, finding that a FRA regulation that would preempt state law also supersedes liability under the FELA. *See Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426 (6th Cir. 2009); *Lane v. R. A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry.*, 218 F.3d 773, 776 (7th Cir. 2000); *Dickerson v. Staten Trucking, Inc.*, 428 F. Supp. 2d 909, 913 (E.D. Ark. 2006); *Tucker v. BNSF Ry. Co.*, No. 2:06-cv-00395, 2008 U.S. Dist. LEXIS 112061, at *4 (E.D. Cal. Aug. 6, 2008). These courts reason that the purpose of the FRSA preemption provision, national uniformity, justifies reducing FELA liability; in other words, when the FRA mandates one standard of conduct, a private litigant should not be permitted to force an additional or more stringent standard on railroad carriers by bringing suit under the FELA. *See*, *e.g.*, *Waymire*, 218 F.3d at 776.

It seems likely the Tenth Circuit would join this consensus; however, the Court need not resolve this issue. Preclusion under the FRSA is always limited to cases where a regulation "covers" a plaintiff's claims. *See Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 893 (8th Cir. 2012) ("To establish that regulations 'cover' the plaintiff's claim, a defendant 'must establish more than that they touch upon or relate to that subject matter, for covering is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.") (citing *CSX Transp. v. Easterwood*, 507 U.S. 658, 664

(1993)); *Thomas v. BNSF Ry. Co.*, 2008 U.S. Dist. LEXIS 94223 (N.D. Okla. Nov. 19, 2008) (allowing plaintiff to proceed with a negligence claim under the FELA because the Secretary of Transportation did not enact "comprehensive safety regulations" relating to the subject matter of plaintiff's claim). BNSF has only identified two relevant FRA regulations.

49 C.F.R. § 229.21 requires a daily inspection and written report describing any non-complying conditions. BNSF has not satisfied its burden of showing that 49 C.F.R. § 229.21 "substantially subsumes" Plaintiff's negligent inspection claim. 49 C.F.R. § 229.21 requires a general inspection, but does not specify how this inspection should occur or what tests a railroad carrier must perform during the inspection. If BNSF was correct and 49 C.F.R. § 229.21 precluded all FELA negligent inspection claims, 49 C.F.R. § 229.21 would bar recovery wherever a railroad carrier completed a cursory inspection even if the railroad carrier never properly checked the mechanical components or other appurtenances of the train to ensure they were operating correctly. This is an untenable result.

As previously discussed, 49 C.F.R. § 229.119(c) requires that "floors of cabs, passageways, and compartments" be "properly treated to provide secure footing." There is a plausible argument that 49 C.F.R. § 229.119(c) "covers" floor treatment and supersedes Plaintiff's claim that BNSF should have applied slip resistant tread to the steps in Locomotive 5371. Even if this is true, preclusion of Plaintiff's floor treatment claim is immaterial. Plaintiff can submit this particular theory of liability to the jury under the LIA. BNSF does not identify any other regulations covering the subject matter of Plaintiff's remaining claims, which all involve interior staircase design. As a result, the Court finds that Plaintiff's negligent design claims are not superseded by the FRSA.

## C. Evidence Supporting Plaintiff's FELA Claim

Having determined that Plaintiff's FELA claim is not precluded, the Court must now consider whether Plaintiff produced sufficient evidence to create a genuine issue of material fact and, therefore, to submit the FELA claim to the jury. In order to recover under the FELA, an employee must show that he was injured in the course of his employment due, at least in part, to the railroad carrier's negligence. 45 U.S.C. § 51; *Volner v. Union Pac. R.R. Co.*, 509 Fed. App'x. 706, 708 (10th Cir. 2013) (listing the elements of an FELA claim as (1) plaintiff's injuries occurred within the scope of employment; (2) plaintiff was employed as part of the railroad carrier's interstate transportation business; (3) the railroad was negligent; and (4) the negligence at least in part caused the injury for which the employee seeks compensation). "[R]easonable foreseeability of harm is an essential ingredient" of negligence under the FELA. *Gallick v. B & O R.R.*, 372 U.S. 108, 117 (1963). As a result, a railroad carrier "is not liable if it has no reasonable way of knowing that a potential hazard exists." *Schaefer v. Union Pac. R.R.*, No. 98-8066, 1999 U.S. App. LEXIS 10809, at *4-5 (10th Cir. 1999). Here, BNSF does not dispute that Mr. Griswold was injured while acting in the scope of his employment as part of BNSF's interstate transportation business. Only the elements of negligence and causation are in dispute.

Viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence for a reasonable fact-finder to conclude that BNSF negligently maintained and designed the steps in Locomotive 5371. First, Mr. Griswold testified about the condition of the step on the day of the accident, calling it "worn" and "pretty slick." Because BNSF has a duty to regularly inspect Locomotive 5371, *see* 49 C.F.R. § 229.21, a rational jury could conclude that BNSF should have been aware that the step on which Mr. Griswold fell had become dangerously worn.

Second, after observing Locomotive 5371 and reviewing staircase construction standards,

Plaintiff's expert, Mr. Kendzior, arrived at the conclusion that the stairway in Locomotive 5371 is unnecessary unsafe.[4] Even though the standards considered by Mr. Kendzior are not railroad specific, the Court cannot say Plaintiff has failed to produce sufficient evidence of BNSF's negligence as a matter of law. Under the FELA, negligence is adjudicated according to the common law standard; a railroad carrier's duty to take precautions is "measured by what a reasonably prudent person would anticipate as resulting from a particular condition." *Gallick*, 372 U.S. at 118. Plaintiff's expert creates a genuine issue of material fact that BNSF knew or should have known that the staircase where Mr. Griswold fell was likely to cause an employee to slip and fall down the staircase.

Likewise, the Court finds that Plaintiff has produced sufficient evidence to raise a genuine question of material fact as to causation. Under the FELA, a plaintiff may recover upon a showing that the railroad carrier's negligence "played any part, even the slightest, in producing the injury." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2643 (2011). As a result, "[t]he standard applied by federal courts in determining whether there is sufficient evidence to send a FELA case to the jury is significantly broader than the standard applied in common law negligence actions." *Metcalfe v. Atchison*, T. & S.F. Ry., 491 F.2d 892, 895 (10th Cir. 1974). Under this lenient standard, Mr. Griswold's testimony warrants submitting the issue of causation on Plaintiff's failure to maintain claim to the jury. In addition, Mr. Kendzior's proposes to testify in regard to Plaintiff's FELA claim that BNSF could have prevented Mr. Griswold's fall by applying slip resistant tread to the stairway, marking the step nosing, installing a handrail, posting warning signs, and modifying the "stair step geometry." Unsurprisingly, BNSF does not argue that this testimony is insufficient to support a finding of causation under the featherweight

---

[4] As the Court explains in its contemporaneously filed MEMORANDUM OPINION AND ORDER, the Court will permit Plaintiff's expert, Mr. Kendzior, to testify about the construction of the stairway on Locomotive 5371.

standard of the FELA. BNSF simply contends, once again, that Mr. Kendzior's testimony is precluded by the LIA. The Court has already considered and rejected BNSF's preclusion argument. The Court will permit Plaintiff to present his FELA claim to the jury.

### IV.     Claims to be Submitted to the Jury

Based on the above rulings, the Court will submit the following theories of liability to the jury: (1) BNSF violated its absolute duty to maintain the steps in Locomotive 5371 in a safe condition in violation of the LIA, (2) BNSF failed to properly treat the steps in Locomotive 5371 in violation of 49 C.F.R. § 229.119(c) and is therefore strictly liable for Mr. Griswold's injuries, and (3) BNSF negligently inspected, maintained, and designed the staircase in Locomotive 5371 in violation of the FELA.

IT IS THEREFORE ORDERED that BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 58) is granted in part and denied in part.

_____
SENIOR UNITED STATES DISTRICT JUDGE